## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JENNIFER L. S.,**

       **Plaintiff,**

  v.                              **Civil Action 2:20-cv-6282**
                                        **Judge Sarah D. Morrison**
                                        **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jennifer L. S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**      **BACKGROUND**

Plaintiff filed her applications for DIB and SSI on June 23, 2017, alleging that she was disabled beginning September 24, 2013. (Tr. 333–42). Plaintiff later amended her alleged onset date to April 21, 2016, the day following the prior administrative decision. (Tr. 78). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held two hearings before issuing a decision denying Plaintiff's applications on March 16, 2020. (Tr. 104–15, 73–102, 12–72). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–6).

Plaintiff filed this action on December 8, 2020 (Doc. 1), and the Commissioner filed the administrative record on May 24, 2021 (Doc. 12). The matter has been briefed and is ripe for review. (Docs. 20, 21).

A.  **Relevant Statements**

The ALJ summarized Plaintiff's statements and background as follows:

> [Plaintiff] consumes and prepares meals on a daily basis, and she performs household chores and cleaning such as dishes, sweeping, and vacuuming (Exhibits B8F/4, B9F/3, and B3E/3-4). [Plaintiff] regularly fishes and hunts (Exhibits B8F/4, B19F/11, 16, and 25, and B3E/6). [Plaintiff] reported regularly running and working out (Exhibit B19F/11, 16, and 25). [Plaintiff] gambles at casinos at least twice a month, and she is able to feed bills into and push buttons to operate, slot machines (Exhibit B13F/2-3 and testimony). [Plaintiff] regularly draws (Exhibit B19F/11, 16, and 25). [Plaintiff] uses electronic mail, Facebook, telephones including cellular phones, text messaging, and the internet (Exhibits B9F/3, B19F/16, B30F/1, and B3E/6).

(Tr. 23).

> [Plaintiff] completed high school by passing the general educational development test, attended some college thereafter, and she reads, writes, speaks, and understands English (Exhibits B9F/2-3, B11F/4 and 7, B13F/13, B15F/3, B19F/16, B38F/2, B41F/2, and B1E/1 and 3, and testimony). [Plaintiff] denied a history of special education in school on one occasion (Exhibit B1E/3). [Plaintiff] denied a history of learning barriers on one occasion (Exhibit B19F/16). [Plaintiff] endorses good abilities for reading and writing, and "pretty good" abilities for math (Exhibit B9F/3).

(Tr. 26).

> [Plaintiff] sometimes cares for her grandchild, including taking to school multiple times a week (Exhibit B3E/3 and testimony). [Plaintiff] has a drivers' license, and she drives and receives rides from others, to get to places she needs to go (Exhibits B8F/4, B9F/1, and B3E/5). [Plaintiff] runs errands and shops in stores (Exhibits B8F/4, B9F/3, and B3E/5). [Plaintiff] is able to leave her residence alone (Exhibit B3E/5). [Plaintiff] regularly fishes and hunts (Exhibits B8F/4, B19F/11, 16, and 25, and B3E/6). [Plaintiff] reported regularly running and working out (Exhibit B19F/11, 16, and 25). [Plaintiff] gambles at casinos at least twice a month, and she is able to feed bills into and push buttons to operate, slot machines (Exhibit B13F/2-3 and testimony). [Plaintiff] regularly draws (Exhibit B19F/11, 16, and 25). [Plaintiff] is capable of attending appointments (Exhibit B9F/3). [Plaintiff] manages her medication by using a pill container (Exhibit B3E/3-4). [Plaintiff] performs money management activities such as counting change, handling savings

> accounts, and using checkbooks and money orders (Exhibits B9F/4 and B3E/5). [Plaintiff] regularly watches television (Exhibits B8F/4, B9F/3, and B3E/6). [Plaintiff] uses electronic mail, Facebook, telephones including cellular phones, text messaging, and the internet (Exhibits B9F/3, B19F/16, B30F/1, and B3E/6). [Plaintiff] repeatedly endorsed looking for work and wanting to work, and her earnings record documents income from employment since the amended alleged onset date of disability (Exhibits B11F/4 and 7, B13F/2, and B19F/16).

(Tr. 27).

### B. Relevant Medical History

The ALJ usefully summarized Plaintiff's medical records as to her lumbar spine impairment:

> Magnetic resonance imaging ("MRI") scan results from March 2016 documented degenerative changes of the lumbar spine predominantly at L3-L5 where there is severe spinal canal stenosis, and degenerative changes contributing to neural foraminal narrowing at L3-S1, and no evidence of spondylolisthesis (Exhibit B5F/87). X-ray results from May 2016 documented degenerative changes from C5-C7 (Exhibit B1F/12). MRI scan results of [Plaintiff]'s cervical spine from November 2016 documented congenitally small bony spinal canal, and disc and osteophytes contributing to further stenosis of the thecal sac and narrowing of the neural foramina (Exhibit B5F/86).

(Tr. 19).

> [Plaintiff] repeatedly had negative musculoskeletal and neurological examination results, with good, intact, and/or normal bulk, coordination, cranial nerves, range of motion, sensory, strength, and tone (Exhibits B1F/12, B5F/13, 15, 20, and 90, B10F/1-6, B23F/1, B26F/2, B29F/2, B30F/5, B35F/1, B37F/3, 13, and 26, B38F/3-4 and 6-9, B40F/7, 16, and 24, B41F/1, and B42F/11 and 15). [Plaintiff] repeatedly had normal, steady, and strong gait and station on her heels and toes, as well as in tandem, with no ataxia, disturbance, limp, and ambulatory aid usage noted or reported (Exhibits B1F/12, B3F/4, 8, and 12, B10F/5-6, B26F/2, B38F/3-4, and B41F/1). [Plaintiff] denies the use of ambulatory aids, and the consultative psychologist opined in September 2019 that [Plaintiff] does not require ambulatory aids (Exhibits B38F/11 and 15, and B3E/8). The September 2017 consultative examination was entirely normal, with [Plaintiff] demonstrating full range of motion and strength throughout, with the exception of decreased range of motion of the dorsolumbar spine and decreased strength of the left hip (Exhibit B10F/1-6. [Plaintiff] had normal bilateral abilities for grasping, pinching, manipulation, fine coordination, 5/5 grip strength and strength of her upper extremities, and normal bilateral fine fingering, at that time (Exhibit B10F/1 and 6). [Plaintiff] had normal bulk and tone, and no problems getting off and on the examination table at that time (Exhibit B10F/5-6). [Plaintiff] demonstrated the ability to hop at that time (Exhibit

3

>B10F/6). The September 2019 consultative examination was entirely normal, with [Plaintiff] demonstrating full range of motion and strength throughout, with the exception of decreased range of motion of the cervical and dorsolumbar spine, and shoulders (Exhibit B38F/3-4 and 6-9). [Plaintiff] had normal bilateral abilities for grasping, pinching, manipulation, fine coordination, picking up objects such as coins and keys, writing holding a cup, opening objects such as doors and jars, buttoning and unbuttoning clothing, and using zippers at that time (Exhibit B38F/6-7). [Plaintiff] could squat halfway, and she had intact cranial nerves, and normal sensory, at that time (Exhibit B38F/4). [Plaintiff] could make fists bilaterally at that time (Exhibit B38F/4). [Plaintiff] demonstrated the ability to stand on either foot at that time (Exhibit B38F/4). [Plaintiff] had normal fine and gross motor abilities in December 2019 (Exhibit B41F/3). [Plaintiff] had negative and normal Babinski, Durkan, Hoffman, Hoffmann, and Homan sign and test results (Exhibits B1F/12, B23F/1, and B38F/4).

(Tr. 21).

The ALJ also discussed the functional area of concentration, pace or problem solving, and task persistence:

>[Plaintiff] had satisfactory concentration, pace or problem solving, and task persistence, at the September 2017 psychological consultative examination (Exhibit 9F/4). [Plaintiff] repeatedly presented as alert, awake, and oriented, with average, good, intact, logical, and normal associations, attention, eye contact, recent and remote memory, and thought processes (Exhibits B3F/4, 8, and 12, B9F/3-4, B10F/6, B11F/5 and 8, B15F/4, 12, and 18, B19F/19, B26F/2, B30F/5, B35F/2, 4, 6-7, and 9, and B41F/3). [Plaintiff] sometimes finishes activities she starts, and is "OK" at following verbal and written instructions (Exhibit B3E/7). [Plaintiff] was alert, clear, and oriented, with good eye contact, well organized associations, and no confusion, at the September 2017 psychological consultative examination (Exhibit B9F/3-4). [Plaintiff] accurately recalled four digits backward and forward, and interpreted one proverb, at that time (Exhibit B9F/4). As discussed below, the evidence documents that [Plaintiff] engages in activities that involve significant concentrating, persisting, or maintaining pace without appreciable or reported difficulties. The consultative psychologist noted that [Plaintiff] has the abilities to live independently, make important decisions about the future, and seek appropriate community resources (Exhibit B9F/4). [Plaintiff] did not demonstrate functional status impairment on one occasion (Exhibit B41F/1). [Plaintiff] endorses history as a hard worker at work (Exhibit B8F/3). [Plaintiff] reports history of good job attendance and performance (Exhibit B19F/16). [Plaintiff] denies any history of firings (Exhibits B8F/3, B9F/2, and B3E/8). [Plaintiff] repeatedly presented as insightful, and with adequate, appropriate, good, intact, and normal impulse control, insight, and judgment (Exhibits B3F/4, 8, and 12, B9F/4, B11F/5 and 8, B14F/2, B15F/4, 12, and 18, B35F/2, 4, 7, and 9, and B41F/3). [Plaintiff] did not demonstrate eccentric and

4

impulsive behavior at the September 2017 psychological consultative examination (Exhibit B9F/3). [Plaintiff] knew what to do if she found an envelope in the street, at that time (Exhibit B9F/4). [Plaintiff] performs grooming, hygiene, and personal care activities such as bathing, shaving, caring for her hair, dressing, feeding herself, and using the toilet independently, without reminders, and with any alleged problems due to physical rather than mental impairments and symptoms (Exhibits B9F/3 and B3E/3-4). [Plaintiff] repeatedly presented with casual, clean, good, neat, and normal appearance, dress, and grooming (Exhibits B8F/4, B9F/3, B10F/5, B15F/11 and 18, B19F/19, B35F/2, 4, 6, and 9, and B41F/3). [Plaintiff] consumes and prepares meals on a daily basis, and she performs household chores and cleaning such as dishes, sweeping, and vacuuming (Exhibits B8F/4, B9F/3, and B3E/3-4). [Plaintiff] sometimes cares for her grandchild, including taking to school multiple times a week (Exhibit B3E/3 and testimony). [Plaintiff] has a drivers' license, and she drives and receives rides from others, to get to places she needs to go (Exhibits B8F/4, B9F/1, and B3E/5). [Plaintiff] runs errands and shops in stores (Exhibits lB8F/4, B9F/3, and B3E/5). [Plaintiff] is able to leave her residence alone (Exhibit B3E/5). [Plaintiff] regularly fishes and hunts (Exhibits B8F/4, B19F/11, 16, and 25, and B3E/6). [Plaintiff] reported regularly running and working out (Exhibit B19F/11, 16, and 25). [Plaintiff] gambles at casinos at least twice a month, and she is able to feed bills into and push buttons to operate, slot machines (Exhibit B13F/2-3 and testimony). [Plaintiff] regularly draws (Exhibit B19F/11, 16, and 25). [Plaintiff] is capable of attending appointments (Exhibit B9F/3). [Plaintiff] manages her medication by using a pill container (Exhibit B3E/3-4). [Plaintiff] performs money management activities such as counting change, handling savings accounts, and using checkbooks and money orders (Exhibits B9F/4 and B3E/5). [Plaintiff] regularly watches television (Exhibits B8F/4, B9F/3, and B3E/6). [Plaintiff] uses electronic mail, Facebook, telephones including cellular phones, text messaging, and the internet (Exhibits B9F/3, B19F/16, B30F/1, and B3E/6). [Plaintiff] repeatedly endorsed looking for work and wanting to work, and her earnings record documents income from employment since the amended alleged onset date of disability (Exhibits B11F/4 and 7, B13F/2, and B19F/16). In this context, it is noteworthy that [Plaintiff] understood and followed the hearing proceedings closely and fully without any appreciable difficulties and responded to questions in an appropriate manner.

(Tr. 30–31).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through March 31, 2018, and that she has not engaged in substantial gainful employment since April 21, 2016, the amended alleged onset date of disability. (Tr. 19). The ALJ also determined that Plaintiff has the following combination of severe impairments: degenerative changes of the cervical and lumbar spine,

5

osteoarthritis of the knees and shoulders, bilateral carpal tunnel syndrome ("CTS"), obesity, and depressive, anxiety, obsessive-compulsive, and trauma- and stressor-related disorders. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 22–23).

Ultimately, the ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but she can carry, lift, pull, and push up to 30 pounds occasionally, and up to 20 pounds frequently. She can sit for 8 hours in an 8-hour workday. She can stand for up to 4 hours at a time, for a total of up to 8 hours in an 8-hour workday. She can walk for up to 60 minutes at a time, for a total of up to 4 hours in an 8-hour workday. Climbing ladders, crawling, crouching, kneeling, and stooping, are each limited to no more than occasionally. Mentally, [Plaintiff] retains the capacity to understand, remember, and carry out simple repetitive tasks and respond appropriately to co-workers and supervisors in a task oriented setting with no more than occasional interaction with co-workers and public contact. She can adapt to simple changes and avoid hazards in a setting with no strict production quotas.

(Tr. 34) (citation to footnote omitted).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that they are not sufficiently supported by the objective medical evidence. The record does not document sufficient objective medical evidence to substantiate the severity of the degree of functional limitations alleged by Plaintiff. (Tr. 35–36).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff was unable to perform any past relevant work experience. (Tr. 62). Further, relying on the VE's testimony, the ALJ determined that given Plaintiff's age, education, work experience and RFC, she was able to perform work that existed in significant numbers in the national economy, such as a sorter, addresser, or table worker. (Tr. 63–64). Consequently, the ALJ concluded that Plaintiff

6

has not been under a disability, as defined in the Social Security Act, since April 21, 2016. (Tr. 64).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff alleges the ALJ erred by: (1) improperly evaluating Plaintiff's impairments under Listing 1.04A at step three (Doc. 20 at 7–11); and (2) making an RFC determination that was not supported by substantial evidence by failing to include limitations in concentration, persistence, or pace. (*Id.* at 11–17). The Undersigned considers each assignment of error in turn.

### A. Listing 1.04A at Step Three

Plaintiff alleges that the ALJ's analysis of Listing 1.04A at step three is inadequate, thus remand is required. (Doc. 20 at 7–11). The Undersigned finds that the ALJ's step three analysis is supported by substantial evidence.

At step three, the ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each Listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant will be found disabled if her impairments meet or equal a listing in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 491 (6th Cir. 2010). The claimant bears the burden of showing that his impairment meets or medically equals a Listing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). And a claimant must satisfy *all* of the criteria to "meet" the listing. 20 C.F.R. § 404.1525(c)(3)*; Rabbers,* 582 F.3d at 653.

Listing 1.04 covers "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, App 1, § 1.04 (available at: https://secure.ssa.gov/poms.nsf/lnx/0434121013). For Listing 1.04A, the disorder of the spine resulting in compromise of nerve root must be accompanied by: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* "[T]he listing requirements are conjunctive; there must be evidence of limited motion *and* motor loss *and* positive straight-leg raising tests." *Brown v. Comm'r of Soc.*

*Sec.*, No. CIV.A. 12-14506, 2013 WL 6537980, at *11 (E.D. Mich. Nov. 18, 2013), *report and recommendation adopted*, No. 12-14506-DT, 2013 WL 6538136 (E.D. Mich. Dec. 13, 2013).

The ALJ concluded that "[b]ased on the objective medical evidence, [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 22–23). Specifically, regarding Listing 1.04A, the ALJ summarized the requirements for the listing and concluded Plaintiff did not meet the listing:

> Listing 1.04A for disorders of the spine requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine). . . . [Plaintiff]'s degenerative changes of the cervical and lumbar spine, and related symptoms, do not individually or in combination meet or medically equal the severity of the criteria of Listing 1.04, as there is no evidence documenting atrophy, . . . as of the amended alleged onset date of disability (Tr. 456, 579–80, 619, 820, 888, 1013 and 1016).

(Tr. 24).

Plaintiff alleges that the ALJ's analysis was insufficient because he did not "evaluate the evidence, compare it to the listings, and provide a detailed explanation of his conclusions to the contrary." (Doc. 20 at 10). Plaintiff relies on the Sixth Circuit's opinion in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415–16 (6th Cir. 2011). (*See, e.g.,* Doc. 20 at 7). Yet, in *Reynolds*, the ALJ found that a claimant had severe mental and physical impairments at step two, but then only analyzed whether the claimant's physical impairments met or equaled a Listing—neglecting entirely an analysis of claimant's mental impairments. *Reynolds*, 424 F. App'x at 415–16. Here, the ALJ explicitly considered Listing 1.04, including 1.04A, and discussed that Plaintiff did not meet Listing 1.04A because she did not present "evidence documenting atrophy[.]" (Tr. 24). In short, the ALJ here, unlike the ALJ in *Reynolds*, did not skip a step in the disability determination

9

process. Thus, the Court concludes that the ALJ's step three analysis is sufficient to facilitate a meaningful review.

Moreover, the Sixth Circuit recognizes that any error with respect to an ALJ's step-three analysis is harmless unless the claimant can establish that she satisfied the listing in question. *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014); *see also Chappell v. Comm'r of Soc. Sec.,* No. 1:14–cv–1005, 2015 WL 4065261, at * 4 (W.D. Mich. July 2, 2015). Here, Plaintiff has not established that she meets Listing 1.04A. Thus, even if the ALJ's analysis was erroneous, that error is harmless.

To meet Listing 1.04A, Plaintiff would have to show that she had (1) a disorder of the spine resulting in compromise of nerve root, (2) nerve root compression, and (3) the other components of Listing 1.04A—limited range of motion, motor loss accompanied by sensory or reflex loss, and straight-leg raising tests. *Brauninger v. Comm'r of Soc. Sec.*, No. 1:16-CV-926, 2017 WL 5020137, at *4 (S.D. Ohio Nov. 3, 2017), *report and recommendation adopted*, No. 1:16-CV-926, 2018 WL 1420573 (S.D. Ohio Mar. 22, 2018), *aff'd*, No. 18-3495, 2019 WL 2246791 (6th Cir. Feb. 25, 2019). Plaintiff satisfied the threshold requirement because the ALJ found that her spinal disorder was a severe impairment at step two. (Tr. 19). But the ALJ concluded that Plaintiff failed to satisfy a necessary Listing 1.04A element because she did not present evidence of atrophy. (Tr. 24). Plaintiff must show "motor loss (*atrophy* with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Part 404, Subpart P, App 1, § 1.04 (emphasis added).

In briefing, Plaintiff argues that multiple clinical examinations "revealed severe neurological findings, including neuro-anatomic distribution of pain; positive straight leg-raising; reduced range of motion; radiculopathy; numbness, tingling, and weakness in her lower

10

extremities." (Doc. 20 at 8 (citing Tr. 451–469, 472, 830)). The "weakness" Plaintiff alleges could potentially be enough to satisfy the motor loss prong that the ALJ concluded Plaintiff did not satisfy. But upon examination of Plaintiff's cited medical records, no evidence of weakness was found. In fact, the opposite was found. Cited medical records indicate that, with regard to a physical examination, Plaintiff's "strength is 5/5 strong and intact in muscle groups innervated by C4-T1 bilaterally with the exception of some possible weakness versus poor effort of her left grip strength." (Tr. 456). It is also noted that this medical record was cited by the ALJ in concluding that Plaintiff did not meet or medically equal Listing 1.04A. (Tr. 24 (citing Tr. 456)). Thus, Plaintiff has not shown evidence of motor loss. Plaintiff does not dispute that she bears the burden of proving every element of the Listing. (Doc. 20 at 7). She has failed to do so. Accordingly, the ALJ's finding that Listing 1.04, specifically 1.04A, was not satisfied is supported by substantial evidence.

In short, Plaintiff alleges that the ALJ's analysis of Listing 1.04A was deficient. But the ALJ provided sufficient analysis at step three to facilitate meaningful review, and the ALJ's step three determination is supported by substantial evidence. Furthermore, the Court finds that even if this were not the case, the step three error would be harmless because Plaintiff has failed to establish that she satisfies Listing 1.04A. Specifically, Plaintiff has not shown evidence of motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.

B.     **RFC determination**

Next, Plaintiff alleges that the ALJ's RFC does not adequately account for her limitations in concentration, persistence, and pace. (Doc. 20 at 13). Because she focuses only on those limitations (*id.* at 13, 16, 17), the Undersigned does the same.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and

11

mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155 (6th Cir. 2009). *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

When determining the RFC, the ALJ is charged with evaluating several factors, including the medical evidence (not limited to medical opinion testimony) and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). The RFC assessment must be based on all the relevant evidence in her case file. 20 C.F.R. § 416.945(a)(1). Since Plaintiff filed her application after May 23, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those

12

from the claimant's medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). An ALJ may discuss how he or she evaluated the other factors but is not generally required to do so. *Id*. In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

> Here, the ALJ determined, in relevant part:
>
> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work . . . Mentally, the claimant retains the capacity to understand, remember, and carry out simple repetitive tasks and respond appropriately to co-workers and supervisors in a task oriented setting with no more than occasional interaction with co-workers and public contact. She can adapt to simple changes and avoid hazards in a setting with no strict production quotas.

(Tr. 34). Regarding concentration, persistence, and pace, the ALJ found that Plaintiff had moderate limitations. (Tr. 30).

Plaintiff takes issue with how the ALJ weighed the various medical opinions of the psychological consultative examiner, State agency psychologists, Plaintiff's treating psychologist, and Plaintiff's physician's assistant. (Doc. 20 at 13–16). At base, Plaintiff disagrees with how the

13

ALJ assessed the medical opinions in determining that Plaintiff "retains the capacity to understand, remember, and carry out simple repetitive tasks and respond appropriately to co-workers and supervisors in a task oriented setting with no more than occasional interaction with co-workers and public contact. She can adapt to simple changes and avoid hazards in a setting with no strict production quotas." (Tr. 34).

Upon review, it is clear that the ALJ extensively considered the medical opinions regarding Plaintiff's limitations in concentration, persistence, or pace, at step three and when fashioning the RFC. The ALJ's analysis at step three is included in the Court's review because "[t]he Sixth Circuit has made clear that an ALJ's decision must be read as a whole." *Carpenter v. Comm'r of Soc. Sec.*, No. 2:18-CV-1250, 2019 WL 3315155, at *10 (S.D. Ohio July 24, 2019), *report and recommendation adopted*, No. 2:18-CV-1250, 2019 WL 3753823 (S.D. Ohio Aug. 8, 2019) (considering the ALJ's discussion of Plaintiff's depressive disorder at step two when determining if the RFC is supported).

Generally, the ALJ found "[t]he consultative psychologist's opinions from 2017 [to be] persuasive in assessing the claimant's mental functional limitations, restrictions, and residual functional capacity as of the amended alleged onset date of disability." (Tr. 47 (citing Tr. 615–16)). The ALJ stated that "these opinions are consistent with and supported by the totality of the evidence . . . which documents that the claimant had satisfactory concentration, pace or problem solving, and task persistence, at the September 2017 psychological consultative examination." (Tr. 48 (citing 615)). The ALJ, at step three and in the RFC determination, explained why this opinion is consistent with and supported by the evidence. (Tr. 30–31, 47–50). The ALJ noted that the Plaintiff "repeatedly presented as alert, awake, and oriented, with average, good, intact, logical, and normal associations, attention, eye contact, recent and remote memory, and thought

14

processes." (Tr. 30 (citing Tr. 478, 482, 486, 614–15, 623, 629, 632, 689, 697, 703, 784, 829, 887, 955, 957, 959–961, 963, 1058)).  She "sometimes finishes activities she starts, and is 'OK' at following verbal and written instructions." (Tr. 30 (citing Tr. 392)).

Further, the ALJ noted that Plaintiff "engages in activities that involve significant concentrating, persisting, or maintaining pace without appreciable or reported difficulties." (Tr. 30).  These activities include living independently, making important decisions about the future, seeking appropriate community resources, being a hard worker with a history of good job attendance and performance, maintaining personal hygiene, preparing meals, doing household chores, caring for her grandchild, partaking in hobbies such as running, gambling, and drawing, managing her finances, and understanding and participating in the hearing closely and fully. (Tr. 30–31 (citing Tr. 388–390, 610, 611, 614, 615, 776, 781, 790)).  In sum, the ALJ found "[t]hese opinions are consistent with and supported by [Plaintiff's] presentation at different times and activities involving significant understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself . . . ." (Tr. 50).

Thus, the ALJ considered the opinion of the consultative psychological examiner and generally found the opinion persuasive.  In coming to this conclusion, the ALJ explained why the opinion is supported and consistent with the extensive medical record. (Tr. 47–50).  That analysis is consistent with the regulations. *See* 20 C.F.R. § 416.920c(b)(2); *Smith v. Comm'r of Soc. Sec.*, No. 2:20-CV-2886, 2021 WL 1996562, at *6 (S.D. Ohio May 19, 2021).

In addition to relying on the consultative psychological examiner's opinion, the ALJ's finding regarding concentration, persistence, and pace is consistent with the State agency reviewing psychologists' opinion.  (Tr. 31).  "The State agency reviewing psychologists opined

initially that the claimant has mild, and upon reconsideration that she has moderate, limitations in concentrating, persisting, or maintaining pace." (Tr. 31 (citing Tr. 153, 169, 186, 203)). Despite the consultative psychologist finding fewer limitations, (Tr. 31 (citing Tr. 615)), the ALJ considered the limitations found by the State agency opinion. (Tr. 31). In considering this opinion and extending Plaintiff the "benefit of the doubt," the ALJ found that Plaintiff "has moderate rather than no or only mild limitations in concentrating, persisting, or maintaining pace." (*Id.*). The ALJ restated his conclusion of a moderate limitation in the RFC analysis. (Tr. 50). A review of the limitations offered by the State agency reviewers shows that they are consistent with the RFC. The State agency reviewers opined that Plaintiff "can sustain simple tasks without pace" and "can adapt to a static setting without frequent changes." (Tr. 191, 192). The RFC limits Plaintiff to "simple repetitive tasks" in an environment where she needs to adapt only to "simple changes" and has "no strict production quotas." (Tr. 34). Thus, the ALJ accounted for the State agency reviewers' opined limitations with regard to concentration, persistence, and pace.

Conversely, the ALJ found the opinions of Plaintiff's psychiatrist and Plaintiff's physician's assistant unpersuasive as they relate to Plaintiff's mental functional limitations. (Tr. 54). The ALJ concluded that "[t]hese opinions are inconsistent with and unsupported by the totality of the evidence . . . which documents that the claimant had satisfactory concentration, pace or problem solving, and task persistence, at the September 2017 psychological consultative examination." (Tr. 56 (citing Tr. 615)). The ALJ supported this conclusion by extensively citing to the record. (Tr. 54–57).

Plaintiff argues that the ALJ should have been more persuaded by the limitations found by the State agency reviewing psychologists, Plaintiff's psychiatrist, and Plaintiff's physician's assistant. (Doc. 20 at 14–16). But, as explained, the ALJ adopted the State agency reviewers'

16

opined limitations regarding concentration, persistence, and pace. (Tr. 31). Notably, Plaintiff has not cited to any portion of the record that shows the State agency reviewers would have required more restrictions with regard to these areas of functioning.

As for Plaintiff's psychiatrist and physician's assistant opinions, the ALJ did what was required when assessing these opinions. He considered the required factors—most importantly supportability and consistency—and found the opinions to be of less value than that of the consultative examiner and the State agency reviewers on this issue. The ALJ's conclusion was supported by a lengthy discussion of the medical record (Tr. 54–57), which satisfies the regulations. *See* 20 C.F.R. § 416.920c(b)(2); *Smith v. Comm'r of Soc. Sec.*, No. 2:20-CV-2886, 2021 WL 1996562, at *6 (S.D. Ohio May 19, 2021). Plaintiff argues that the limitations, which the ALJ neglected to adopt, "correspond with substantial evidence of the record." (Doc. 20 at 14). And yet, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

At base, Plaintiff wishes the ALJ had interpreted the evidence regarding her concentration, persistence, and pace differently. *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for the ALJ's. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the

ALJ.")). The ALJ properly considered various medical opinion evidence, determined whether it was consistent with and supported by the medical record, and decided which opinions were persuasive. This is what is required when considering medical opinions, and the ALJ's ultimate conclusion is supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 20) and **AFFIRM** the Commissioner's decision.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: January 21, 2022                          /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE